FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 18, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

DONALD, B.,[1]

               Plaintiff,

   vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

               Defendant.

No. 2:19-cv-00063-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 14, 15

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 24, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of August 1, 2012. Tr. 163-73. The application was denied initially, Tr. 93-96, and on reconsideration, Tr. 98-100. Plaintiff appeared before an administrative law judge (ALJ) on December 6, 2017. Tr. 29-65. On March 7, 2018, the ALJ denied Plaintiff's claim. Tr. 12-28.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 24, 2016. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: borderline personality disorder with anxiety and morbid obesity. Tr. 17.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 17-18. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels with the following limitations:

> [H]e can never climb ladders, ropes, or scaffolds; he should avoid all exposure to unprotected heights; he must have a low stress environment, defined as only occasional job related decision making and only occasional changes in the work setting; work that involves only occasional and superficial interaction with co-workers and the public, with no tandem tasks; and work that does not involve crowds. His work should also be isolated with only occasional supervision/interaction with supervisors.

Tr. 18-19.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 23. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, field crop/farm worker, kitchen helper, and housekeeper/cleaner. Tr. 24. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. Tr. 24.

On December 28, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 14 at 13.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 13-15. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7)

any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 416.929 (c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. 19.

### 1. Daily Activities

The ALJ found that Plaintiff's claims of debilitating impairments were inconsistent with his daily activities.  Tr. 19.  A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict [his] other testimony, or (2) the claimant "is able to spend a substantial part of [his] day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d

853, 857 (9th Cir. 2001).  However, it is well-established that a claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

Here, the ALJ noted that Plaintiff "prepares meals, does household chores, drives, shops, takes [his] son and wife to school and work, plays video games, listens to music, watches television, and has reported being a stay at home dad." Tr. 19.  He noted that Plaintiff indicated that recently he had been "playing his guitar while watching television."  Tr. 18.  The ALJ found these activities to be inconsistent with Plaintiff's allegations that he had "difficulty interacting and being around people in general (with an almost paranoia element), dealing with stress and difficulty focusing on more than one thing at a time."  Tr. 19.  On balance, the ALJ found that these activities, performed on a consistent basis, demonstrate that Plaintiff "has more than just a minimal capacity to adapt to changes in his environment or to demands not already part of [his] daily life," and that he is able to "be aware of normal hazards and take precautions, maintain his hygiene, and make plans independent of others."  Tr. 18.

The ALJ did not base his finding of nondisability exclusively on Plaintiff's daily activities.  Instead, the ALJ permissibly relied on this evidence, in part, to reject Plaintiff's contention that his reported symptoms of borderline personality disorder, clinical depression, bipolar disorder, generalized anxiety order, and high blood pressure (which included, for example, Tr. 202, difficulty dealing with any

stress or pressure, uncontrollable anger, and intense depression, Tr. 207, difficulty focusing when agitated, making it impossible to remember, concentrate, understand, follow instructions, and get along with others, Tr. 208, difficulty handling stress and/or changes in routine, Tr. 43, agoraphobia, Tr. 49, nervousness, paranoia, and panic attacks) substantially limit his functioning to the point of "debilitat[ion]." Tr. 20; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Molina*, 674 F.3d at 1113 ("[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the ALJ did not err in finding that the claimant's ability to care for her own personal needs, cook, clean, shop, interact with family, and manage her finances suggested that the claimant "was quite functional" and undermined the alleged severity of her impairments). As in *Molina*, Plaintiff's daily activities are relevant to the alleged degree of severity of his specific symptoms including allegedly debilitating panic attacks, anxiety affecting his ability to engage with others, and debilitating depression. Although the evidence of Plaintiff's daily activities could form the basis of an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational, and the Court must uphold the ALJ's decision

where the evidence is susceptible to more than one rational interpretation." *See*

*Burch*, 400 F.3d at 680-81 (internal quotation marks and alterations omitted).

In addition, the ALJ found that the RFC would sufficiently accommodate Plaintiff's asserted limitations. Tr. 19. The RFC mandates a "low stress environment," with only occasional job-related decision making and changes in the work setting. Tr. 18. It requires only occasional and superficial interaction with co-workers and the public and prohibits Plaintiff from working with crowds. Tr. 19. It allows for only occasional supervision and interaction with supervisors, ensuring that Plaintiff is relatively isolated from interacting with others at work. Tr. 19. In these ways, the RFC addresses the complaints reported by Plaintiff by reducing the likelihood of workplace stress or performance-based pressure, by limiting workplace changes to allow for stability and routine, and by insulating Plaintiff to a reasonable extent from interaction. As such, Plaintiff's reported limitations do not call for a more restrictive RFC than set forth by the ALJ.

### 2. *Positive Response to Treatment*

The ALJ found Plaintiff's allegations were inconsistent with his record of positive responses to treatment. Tr. 19. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are

ORDER - 13

not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  In his opening brief, Plaintiff failed to present argument on this reason, thus, waiving any challenge.  *See* ECF No. 14 at 13-15; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  However, the Court conducted an independent review of the ALJ's decision and determines the reason is supported by substantial evidence in the record.

The ALJ noted that "after finally beginning treatment in August 2016, [Plaintiff] has continued to be noted to be doing well and improving."  Tr. 19 (citing Tr. 293-347, 357-404, 418-62).  The record contains numerous reports indicating improvement of Plaintiff's mental impairments with treatment.  *See* Tr. 298 (Plaintiff reports doing "fairly well overall," is able to accomplish tasks, has increased focus, experiences more transient and less severe self-harm thoughts, and has some anxiety which "appears to be situational;" "meds are helping, depression and anxiety don't last as long"); Tr. 358 (describes helpfulness of anxiety diary;

describes being able to hold a conversation with stranger using learned techniques); Tr. 420 (reports that duration and intensity of depression and anxiety has changed, that he is more frequently able to successfully go out in public, and that his anger is "much more under [his] control now"); Tr. 426 (reports ability to stay out in a public setting on eight of the last nine days); Tr. 432 (reports spending 10 hours outside the house last week); Tr. 437 (reports ability to remain in a public space for four hours on July 4th and reduced "overall emotion misery"); Tr. 439 (Plaintiff reports he is progressing).

In reply, Plaintiff argues that the records indicate regression rather than improvement, pointing to reports noting that an increased dosage of medication was prescribed, self-reported increased hypervigilance and anxiety, and self-reported increased depression. *See* ECF No. 16 at 5-7 (citing Tr. 361-63, 375-77, 387-89, 419-21, 427-30, 449-52). However, even acknowledging the presence of these reports, the ALJ reasonably interpreted the record as a whole as demonstrating improvement of symptoms with treatment. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. This was a clear and convincing and unchallenged reason to find Plaintiff's symptom claims less credible.

### 3. Inconsistency with Objective Medical Evidence

The ALJ found that Plaintiff's assertions regarding the magnitude of his suicidal thoughts at the hearing were inconsistent with the treatment notes in the record. Tr. 19. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins,* 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch,* 400 F.3d at 680.

At the hearing, Plaintiff described having suicidal thoughts "everyday all the time," but explained that the thoughts do not go to the level of intention. Tr. 50. The ALJ found that Plaintiff's assertions were "undermined by his treatment notes, which show that he was doing well and benefitting from treatment." Tr. 19. Plaintiff merely repeats the finding of the ALJ but does not otherwise refute it. ECF No. 14 at 14. The record is replete with reports concerning Plaintiff's suicidal/homicidal/self-injurious thoughts and behavior or lack thereof; reports consistently state Plaintiff "denies any plan or intent to harm self of others." *See e.g.*, Tr. 297, 304, 306, 309, 312, 316. However, other reports document suicidal

ideation and homicidal ideation. Tr. 300 (Plaintiff has a passive without plan or intentful suicidal ideation); Tr. 313 (Plaintiff reports he has "constant thoughts of suicide," but does not have "plans or intent" to carry out those thoughts); Tr. 330 (Plaintiff states that he has tried to kill himself "more times than I can count"); Tr. 376 (Plaintiff reports homicidal ideation regarding an eight-year-old neighbor). The ambiguity in the record is furthered by Plaintiff's documented unwillingness to disclose suicidal/homicidal thoughts to his doctors. Tr. 366-67, 372-75.

Based on the record, the ALJ's conclusion that the treatment notes were inconsistent with Plaintiff's testimony regarding suicidal ideation is not supported by substantial evidence. Nevertheless, this error is harmless where, as discussed *supra*, the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Here, the ALJ provided clear and convincing reasons supported by

substantial evidence to discount Plaintiff's symptom complaints.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of

Dennis Dyck, Ph.D., Nancy Winfrey, Ph.D., Joe Anderson, Ph.D., Michael Regets,

Ph.D., and Howard Platter, M.D.  ECF No. 14 at 16-17.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id*.  "In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester*, 81 F.3d at 830-31).

### 1. Dr. Dyck

On December 9, 2016, Dr. Dyck conducted a consultative mental evaluation after reviewing Frontier Behavioral Health progress notes from August 1, 2015 through October 4, 2016, and a Community Health Associates of Spokane encounter note dated July 27, 2016. Tr. 288-95. Dr. Dyck diagnosed Plaintiff with Borderline Personality Disorder and noted that Plaintiff has "long standing problems in regulating his emotions and limited social skills." Tr. 291. In terms of functional abilities, Dr. Dyck found "claimant has some impairment in his ability to reason and understand," mild impairments in concentration and persistence, moderate impairments in his abilities to interact with co-workers and the public and to maintain regular attendance in the workplace, and marked impairments in

his abilities to complete a normal day or work week without interruption from symptoms and to deal with the usual stresses of the workplace. Tr. 291.

The ALJ gave partial weight to Dr. Dyck's opinion. Tr. 22. As Dr. Dyck's opinion was contradicted by Dr. Winfrey's opinion, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Dyck's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Dyck's opinion was "not supported by his unremarkable examination with the claimant." Tr. 22. A medical opinion may be rejected if it is unsupported by medical findings, *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992), or by the physician's own treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Plaintiff failed to challenge this issue in his opening brief and thus waived any challenge to the ALJ's finding. *See Carmickle,* 533 F.3d at 1161 n.2. However, the Court conducted an independent review of the ALJ's decision and finds that this was a specific and legitimate reason to reject the opinion.

Dr. Dyck's examination notes indicate Plaintiff's general appearance was normal, he was reasonably well groomed, there was no evidence of psychomotor agitation or retardation, he was cooperative, he had normal speech and goal-oriented thought processing, he was well-oriented, he had a good memory and fund

of knowledge, he "generally had little difficulty in following the conversation," and he is aware of his emotional dysregulation problems and is learning coping skills and benefitting from treatment. Tr. 290-91. These examination notes, coupled with the relatively mild limitations identified by Dr. Dyck (*i.e.*, mild impairment in concentrating based on concentration test and moderate impairment in working with others), were reasonably interpreted to be inconsistent with Dr. Dyck's conclusion that Plaintiff would have moderate to marked impairments in his ability to regularly attend work, complete a normal workday, and deal with the usual stress of working with or being around others. Accordingly, the ALJ's finding constitutes a specific and legitimate reason to give only partial weight to Dr. Dyck's opinion.

Second, the ALJ discounted Dr. Dyck's opinions as being based on Plaintiff's unreliable symptom complaints. Tr. 22. A physician's opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149. While Dr. Dyck was able to examine Plaintiff, the ALJ found that his functional assessment and ultimate opinions were founded on Plaintiff's self-reports, rather than on personal observations during the exam and/or objective evidence. Tr. 22. Dr. Dyck's prognosis and functional assessment appear to corroborate this, particularly where his own examination notes were relatively unremarkable, as discussed *supra*. For example, in stating that Plaintiff

will need reminders to complete tasks, Dr. Dyck writes, "claimant does describe [sic] his ability to follow through on tasks in his home but will require reminders to do so." Tr. 291. Dr. Dyck refers to Plaintiff's self-report that his mood regulation problems caused "significant interpersonal challenges in his personal life and prior work environments," to conclude that such mood symptoms would result in a moderate to marked impairment in his ability to maintain regular attendance at work. Tr. 291. While Plaintiff may disagree with the ALJ's interpretation of the evidence, the ALJ's determination that Dr. Dyck's findings were based on Plaintiff's properly discredited self-reports was reasonable and supported by substantial evidence. The ALJ's finding constitutes a specific and legitimate reason to give only partial weight to Dr. Dyck's assessment.

Third, the ALJ found that Dr. Dyck's extreme limitations were inconsistent with Plaintiff's daily activities. Tr. 22. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Specifically, the ALJ concluded that Dr. Dyck's opinion that Plaintiff had a marked impairment in his ability to complete a normal day/work week without interruptions from his symptoms was inconsistent with "claimant's reported activities of daily living." Tr. 22. The ALJ noted that Plaintiff reported driving his wife and son to work and school regularly and completing daily chores. Tr. 22; *see* Tr. 203, 211-17. The

ALJ's determination that Dr. Dyck's finding of a marked impairment was inconsistent with Plaintiff's reported daily activities is supported by substantial evidence and constitutes a specific and legitimate reason to reject the finding.

### 2. *Dr. Winfrey*

Dr. Winfrey reviewed Plaintiff's medical records and served as an impartial medical expert at Plaintiff's hearing on December 6, 2017. *See* Tr. 29-65. Dr. Winfrey testified that Plaintiff's records indicated two diagnoses, borderline personality disorder and major depressive disorder, however, she determined that there was not "enough symptomatology to confirm," the major depressive disorder diagnosis as a severe impairment. Tr. 22. Dr. Winfrey opined the following limitations: moderate limitation in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and moderate limitation for adapting/managing self. Tr. 22. As to Plaintiff's functional abilities, Dr. Winfrey noted he should not have constant supervision or interaction with supervisors, that he should not engage in teamwork or tandem tasks with coworkers, that he should not work in settings involving crowds or a dense number of people in the same space, and that he should only work in a low stress environment. Tr. 22. Ultimately, Dr. Winfrey concluded that Plaintiff was not limited regarding skill level of employment. Tr. 22.

The ALJ gave significant weight to Dr. Winfrey's testimony. Tr. 22. Generally, an ALJ should accord more weight to the opinion of an examining physician than to that of a nonexamining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995). However, an ALJ may credit the opinion of a nonexamining expert who testifies at the hearing and is subject to cross-examination. *Id.* at 1042 (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Id.* at 1041. Plaintiff's argument in his opening brief consists of the following, "[t]he ALJ has committed reversible error … by giving 'significant weight' to the testimony of the non-examining non-treating doctor that testified as a ME at the hearing. As noted, the ME erroneously thought that [Plaintiff] went to college." ECF No. 14 at 17. Because Plaintiff failed to develop this argument with any specificity, it is waived. *See Carmickle,* 533 F.3d at 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kang*, 154 F.3d at 1000 (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). The Court has independently reviewed the issue and concludes that the ALJ's decision was sufficiently supported.

Dr. Winfrey testified at the hearing and was subject to cross examination by Plaintiff's counsel. Tr. 22. The ALJ provided several reasons for giving more weight Dr. Winfrey's opinions. Tr. 22. First, the ALJ noted that Dr. Winfrey had considerable expertise and familiarity with Social Security disability evaluation criteria. Tr. 22. Because, the ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion, *Orn*, 495 F.3d at 631, this was a permissible reason to credit Dr. Winfrey's testimony. Second, the ALJ noted that Dr. Winfrey had the "entire record for review." Tr. 22. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Dr. Winfrey testified to having reviewed all relevant medical records before reaching her opinion.[3]

---

[3] In comparison, Dr. Dyck reported that he reviewed "Frontier Behavioral Health progress notes inclusive of 8/1/15 through 10/4/16," and only one examination note from CHAS dated 7/27/16. Tr. 288. CHAS saw Plaintiff from 7/27/2016 through 7/25/2017. *See* Tr. 279-87, 348-55, 405-17.

ORDER - 25

On reply, Plaintiff argues that Dr. Winfrey did not testify that "she had a high level of understanding of Social Security disability programs," and that " just because [a] regulation states that the agency's medical and psychological consultants are highly qualified…does not mean that they are aware of the extent of a disability claimant's medical condition and psychological condition." ECF No. 16 at 9-10. However, Dr. Winfrey testified that she reviewed Plaintiff's medical records in full, Tr. 33, and demonstrated knowledge of the record throughout her testimony. Tr. 34-42. Moreover, Plaintiff did not object to having Dr. Winfrey testify as a medical expert at the hearing or otherwise question her qualifications, Tr. 34, which are documented in the record. Tr. 463-65 (licensure, education, and professional activities). Based on Dr. Winfrey's familiarity with the record and qualifications, the ALJ afforded significant weight to her opinion.

Finally, the ALJ found that Dr. Winfrey's assessment of Plaintiff's limitations was substantially supported by and consistent with the record. Tr. 22. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion,

and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn,* 495 F.3d at 631; 20 C.F.R. § 416.927(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record").

Dr. Winfrey's assessment of Plaintiff's limitations accounted for particular limitations (interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing oneself), explained the source of those limitations (borderline personality disorder, anxiety around crowds, anger management and homicidal ideation), explained the functional limitations resulting from those limitations (need for limited supervision, inability to work closely with co-workers, public, or in crowds, need for a low stress work environment), and concluded that Plaintiff could do any level of work so long as it was in a low stress environment. *See* Tr. 22, 35-42. These limitations and their sources are consistent with the record as a whole; the record shows limitations due to Plaintiff's mental impairments while also demonstrating Plaintiff can interact with others in smaller groups, *see e.g.*, Tr. 294 (Plaintiff states "he really likes" his anger management class because he met other individuals dealing with similar struggles), that Plaintiff can focus on and complete tasks in the right environment, Tr. 33, 296 (completed AA in general studies, Bachelor degree in psychology, and Master's degree in organizational psychology); Tr. 194 (worked at Integrated Personnel for nine

months); Tr. 293-347, 356-404, 418-62 (routinely completed homework for treatment including cognitive coping worksheets and diary cards); Tr. 202-17, 291 (performs daily activities including driving son and wife to school and work, feeding and caring for pets, and household chores, and engages in hobbies including playing videogames, writing science fiction, building models, communicating with friends online, and playing bass guitar), and that Plaintiff benefits from treatment, as discussed *supra*.

Plaintiff argues that Dr. Winfrey's testimony is not consistent with the record and points out erroneous facts and impressions relied upon by Dr. Winfrey. ECF No. 16 at 2-3. For example, Plaintiff asserts that Dr. Winfrey's assessment was based on misimpressions that Plaintiff attended college in person, that Plaintiff did not have severe depression, and that Plaintiff "does activities outside of his home with his son." ECF No. 16 at 2-3. Except to the extent Plaintiff argues these misimpressions impacted Dr. Winfrey's view of Dr. Dyck's credibility, he does not explain how they impact the limitations Dr. Winfrey identified. Plaintiff further argues that the treatment records are at odds with Dr. Winfrey's opinion and highlights several records that he asserts indicate worsening symptoms. ECF No. 16 at 2-3. The record does contain self-reports indicating increased symptoms at times: depression (Tr. 303, 393, 425); desire to engage in self-harm (Tr. 309, 386); hypervigilance/anxiety (Tr. 376, 397, 418). However, the ALJ discredited

Plaintiff's subjective symptom testimony for clear and convincing reasons, as discussed *supra*. Moreover, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038.

The ALJ identified specific and legitimate reasons supported by substantial evidence for crediting Dr. Winfrey's opinion.

### 3. Remaining Nonexamining Doctors

The ALJ gave partial weight to the opinions of State agency psychological consultants Jon Anderson, Ph.D. and Michael Regets, Ph.D., and to medical examiner Howard Platter, M.D. Tr. 21. Each doctor determined that Plaintiff did not have disabling impairments. *See* Tr. 66-77, 79-81. In particular, Dr. Anderson and Dr. Regets found that Plaintiff's alleged mental impairments did not equate to a disability. Tr. 70, 87. Dr. Platter found that Plaintiff did not have a severe medical impairment. Tr. 84. In giving partial weight to the opinions, the ALJ reasoned the assessments "continued to be an accurate reflection of the claimant's record and functional capacity," and were supported by Plaintiff's daily activities, ability to adapt, and independence. Tr. 21.

Plaintiff summarily asserts that the opinions of the nonexamining doctors are "not consistent with the treatment records at Frontier Behavioral Health and there is no evidence of any significant improvement," in Plaintiff's symptoms. ECF No.

16 at 7-8. Despite Plaintiff's belief that "the ALJ committed reversible error by giving partial weight to the opinion of the State Agency psychological consultants," he does not provide any substantive argument or explanation for this Court to review. *See* ECF No. 14 at 16-17. Accordingly, any challenge to those findings is waived. *See Carmickle,* 533 F.3d at 1161 n.2 (determining Court may decline to address on the merits issues not argued with specificity); *Kang*, 154 F.3d at 1000 (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.").

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE**.

DATED November 18, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE